1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA,                    CASE NO. 09CR3330 WQH

12                              Plaintiff,         ORDER
              vs.
13   LUCIA ROMERO-GOMEZ,

14                              Defendant.

15

16   HAYES, Judge:

17        The matters before the Court are the motion to dismiss the indictment and the motion

18   to suppress statements filed by the Defendant Lucia Romero-Gomez.  ECF No. 58-1 and 58-2.

19                          **BACKGROUND FACTS**

20        On August 24, 2009, government agents stopped the Defendant Lucia Romero-Gomez

21   entering the United States through the San Ysidro Port of Entry.  Defendant was the driver and

22   sole visible occupant of a Dodge pickup truck.   Two individuals were found by law

23   enforcement agents concealed behind the driver's seat lying on top of one another, Felix Diaz-

24   Sandoval and Jesus Larios-Mejia.

25        Defendant was arrested.  Defendant was informed of her *Miranda* rights, and signed a

26   form entitled "WARNING AS TO RIGHTS" which included a "WAIVER."  ECF No. 59-1

27   at 2.  Defendant was interviewed and made statements to law enforcement agents.

28        Customs and Border Protection officers conducted a videotaped interview of the two

individuals concealed behind the seat of Defendant's vehicle. Felix Diaz-Sandoval stated that he was a citizen and national of Mexico who agreed to pay $3500 to be smuggled into the United States. Diaz-Sandoval stated that he was loaded into the vehicle and heard a woman's voice as they were waiting in line, but could not identify the Defendant. Agents retained Diaz-Sandoval as a material witness. Jesus Larios-Mejia stated that he was a citizen and national of Mexico who agreed to be smuggled into the United States. Larios-Mejia stated that he was loaded into the vehicle in a carport prior to crossing the border, and that he saw an English-speaking woman next to the vehicle wearing blue jeans but did not see her face. After the interview, Larios-Mejia was granted voluntary departure.

On October 16, 2009, a videotaped deposition of Felix Diaz-Sandoval was conducted. At the deposition, Diaz-Sandoval stated that the Defendant was present when he was loaded into the vehicle. Diaz-Sandoval stated that she spoke to him in English when he entered the vehicle and that she told him not to move as they approached the port of entry.

## RULING OF THE COURT

### 1. Motion to Dismiss Indictment

Defendant contends that the Court should dismiss the indictment on the grounds that government agents deported one of the two material witnesses found behind the driver's seat. Defendant contends that the Government has deprived her of her right to a fair trial though its intentional release of an eyewitness. The Government asserts that the Defendant has not made any showing of bad faith by the government agents or prejudice to the Defendant's case.

The right to retain a deportable alien witness is based upon the Fifth Amendment guarantee of due process of law and the Sixth Amendment guarantee of compulsory process for obtaining witnesses in one's favor. *See United States v. Medina-Villa*, 567 F.3d 507, 516 (9th Cir. 2009). In *United States v. Dring*, 930 F.2d 687, 693 (9th Cir. 1991), the Court of Appeals explained:

> In cases of constitutionally guaranteed access to evidence, wherein the Government loses potentially exculpatory evidence, the Supreme Court applies a two-pronged test of bad faith and prejudice.... Under this two-pronged test, the defendant must make an initial showing that the Government acted in bad faith *and* that this conduct resulted in prejudice to the defendant's case. To prevail under the prejudice prong, the defendant must at least make 'a plausible showing

1   that the testimony of the deported witnesses would have been material and
2   favorable to his defense, in ways not merely cumulative to the testimony of
    available witnesses.'

3   *Id.* quoting *United States v. Valenzuela Bernal*, 458 U.S. 858, 873 (1982). "To establish that
4   the government acted in bad faith, [the defendant] must show either that the Government
5   departed from normal deportation procedures or that the Government deported [the witness]
6   to gain an unfair tactical advantage over him at trial." *Medina-Villa*, 567 F.3d at 517-518
7   (quotation and citation omitted).

8       In this case, government agents tape recorded interviews with the two material
9   witnesses and allowed one of the witnesses voluntary departure. There is no showing that
10  government agents deported the material witness to gain an unfair advantage or that the agents
11  departed from normal deportation procedure. The Court concludes that there are no facts to
12  support an inference of bad faith by government agents and no facts to support an inference
13  of prejudice to the Defendant's case. Defendant's motion to dismiss the indictment is denied.

14  2. **Motion to Suppress Statements**

15      Defendant moves to suppress her statements made following *Miranda* warnings on the
16  grounds that her waiver of *Miranda* rights was not freely and voluntarily given.[1] The
17  Government asserts that the post-arrest statements are admissible because the Defendant
18  knowingly, intelligently, and voluntarily waived her *Miranda* rights.

19      In order for inculpatory statements made by a defendant during custodial interrogation
20  to be admissible in evidence, the defendant's "waiver of Miranda rights must be voluntary,
21  knowing, and intelligent." *United States v. Binder,* 769 F.2d 595, 599 (9th Cir. 1985). In order
22  to be knowing and intelligent, "the waiver must have been made with full awareness of both
23  the nature of the right being abandoned and the consequences of the decision to abandon it."
24  *Moran v. Burdine*, 475 U.S. 412, 421 (1986).

25      The Government bears the burden of establishing the existence of a valid waiver of
26  *Miranda* rights. *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979). The validity of a

27

28  ─────────────────
        [1] Defendant's motion to suppress pre-*Miranda* statements is not addressed by the Government
    and does not appear to be at issue.

waiver depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the defendant. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). "Several factors to consider are (i) defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v) whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system." *United States v. Crews*, 502 F.3d 1130, 1140 (9th Cir. 2007).

In this case, Defendant's advisal of *Miranda* rights and her post-arrest statement were video-recorded. The only evidence submitted in the record is the "WAIVER" signed by the Defendant which states that "I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind is being used against me." ECF No. 59-1 at 2. The Court concludes that the written waiver is adequate to carry the Government's burden to demonstrate that *Miranda* rights were given and knowingly and intelligently waived. There are no facts and circumstances in this case to support the conclusion that Defendant's waiver *of Miranda* rights was not a knowing and intelligent waiver. Defendant's motion to suppress statements in denied.

IT IS HEREBY ORDERED that the motions to dismiss the indictment ECF No. 58-1 and to suppress statements ECF No. 58-2 filed by the Defendant Lucia Romero-Gomez are denied.

DATED: February 8, 2011

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge